UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIE J. BAKER,

                                Petitioner,

                                                      DECISION AND ORDER

-vs-
                                                      6:19-CV-6218 CJS

SUPERINTENDENT, COXSACKIE
CORRECTIONAL FACILITY,[1]
                                      Respondent.
_____

## INTRODUCTION

Petitioner Willie Baker ("Baker" or "Petitioner") brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in New York State County Court, Monroe County, upon a jury verdict, of Assault in the First Degree, New York Penal Law § 120.10[1],[2] for which he was sentenced, as a second felony offender, principally to an eighteen-year term of imprisonment. The Petition (ECF No. 1) asserts that the conviction was unconstitutionally obtained. However, for the reasons explained below, the petition for a writ of habeas corpus is denied.

## BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action. Briefly, the evidence introduced at trial, viewed in the light most-favorable to the prosecution, indicates that on New Year's Eve, 2011, Petitioner, who had recently been

---

[1] Petitioner was confined at Green Haven Correctional Facility when he commenced this action, and named the Green Haven Superintendent, Jamie Lamanna, as Respondent. However, Petitioner is presently confined at Coxsackie Correctional Facility, and the Court therefore amends the caption to indicate that the proper respondent is the Superintendent at Coxsackie. The Clerk of the Court is directed to amend the caption accordingly and terminate Lamanna as a party.

[2] "A person is guilty of assault in the first degree when: 1. With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument;"

released from prison, attacked his estranged wife and stabbed her eight times with a knife or similar sharp object.  At trial, the victim and another eyewitness testified that Petitioner, who was significantly taller and heavier than the victim, repeatedly stabbed the victim as she cowered in the corner of a hallway.  The victim sustained several deep lacerations to her left side, left arm and left hand.

The victim indicated that Petitioner attacked her after she told him that she no longer wanted a relationship with him.  Petitioner admitted that he had a physical altercation with the victim, during which she was injured with a knife.  However, he contended that he was entitled to use force against the victim, since he had caught her performing a sexual act on her two-year-old son, after which she had attempted to stab him.[3]  More specifically, Petitioner alleged that he punched the victim after observing her perform the sex act, after which she grabbed a knife from a nightstand and tried to stab him.  Petitioner asserted that he pulled the knife from the victim's hand, after which they "tussled" and she sustained her injuries. However, the victim and another witness testified that the victim's child was not present at the scene prior to or during the stabbing.

The victim and a doctor both testified at trial that, as a result of the stabbing, the victim became unable to properly bend her left elbow, requiring her to have physical therapy and additional surgery, and also lost feeling in her thumb due to nerve damage.[4] The victim's medical records (People's Exs. 20–22) were admitted into evidence without objection.[5]

---

[3] The son was born to the victim and another man while Petitioner was in prison.
[4] The laceration near the victim's elbow did not heal properly, resulting in an inability to completely bend the left elbow joint, while another laceration to her hand caused nerve damage and loss of sensation in the hand.
[5] Trial Tr. at p. 277.

As part of the defense case, defense counsel informed the court that he intended to introduce testimony from the victim's landlord, who had allegedly told Petitioner she suspected the victim might be abusing her son.  Defense counsel indicated, in that regard, that the landlord's testimony was relevant to Petitioner's state of mind at the time of the stabbing.[6]  However, the trial court ruled that such testimony from the landlord, who never actually witnessed the victim abuse her child, would be precluded as irrelevant.  The court ruled, though, that Petitioner could testify concerning what the landlord told him insofar as it related to his state of mind.[7]

Petitioner testified at trial and indicated, first, that contrary to the victim's testimony, the argument between them had been about the fact he did not want a relationship with the victim.[8] Petitioner then testified, as noted earlier, that he observed the victim perform a sex act on her son, and then punched her because he was angry, after which she grabbed a knife from a fruit basket on a nightstand attempted to stab him.  He indicated that he pulled the knife from the victim's hand, but that she continued to attack him, and that they "tussled" for several seconds until a bystander yelled at them to stop.  Petitioner indicated that he never tried to stab the victim, that any injuries to her resulted from their struggle over the knife, and that he himself was injured during the scuffle.  Petitioner admitted, however, that he fled the scene before the police arrived, though he watched their investigation from across the street, and that he subsequently left Rochester and traveled to several different states before surrendering to the police approximately a year

---

[6] Trial Tr. at pp. 298–301.
[7] Trial Tr. at p. 320 ("THE COURT: I'm not going to allow [the landlord] to testify as to all this possible sexual abuse that she perceived and then conveyed to him.  It's what he heard and what his state of mind is that it relevant.  What actually she saw is irrelevant for purposes of this trial.").
[8] Inconsistently, Petitioner admitted on cross-examination that after the assault he had written a letter to the victim telling her that he had been angry at her because of her relationship with the child's father.

later.  Incidentally, Petitioner did not testify to what the victim's landlord had allegedly told him about the victim's alleged abuse of her son prior to the stabbing, even though the trial court ruled that he could so testify, and even though he maintains in this action that the substance of the landlord's testimony was crucial to his defense.

At the close of the People's proof, and again at the close of all proof, defense counsel moved for a trial order of dismissal, on the ground *inter alia* that the victim had not sustained a "serious injury," but the court denied the applications.

During closing arguments, defense counsel acknowledged that the victim had suffered serious physical injury, but argued that Petitioner had not intended to cause such injury. *See, e.g.*, Trial Tr. at p. 387 ("So, I'm asking you to focus all your attention on one thing.  Did he intend to cause serious physical injury?  And I'll go through with you how I don't believe he intended to cause serious physical injury.").  Defense counsel argued, rather, that Petitioner had acted to protect the child, and then himself, from the victim. Defense counsel further argued that the injury to the victim's hand had probably occurred when Petitioner had pulled the knife out of the victim's hand, as she was attempting to stab him.[9]  Defense counsel also argued that the victim's testimony was not credible, and that her wounds would not have been caused by a stabbing motion.[10]

During the charging conference defense counsel did not request a justification-defense instruction, but agreed to an expanded instruction concerning intent.  In that regard, as the prosecution noted, defense counsel's strategy was simply to argue that Petitioner had not intended to murder or cause serious injury to the victim.[11]

---

[9] Trial Tr. at p. 393 ("She comes at him.  He backs up a step or two, pulls the knife out of her left hand. Exactly how you would be cut into the webbing as the doctor described, by pulling a knife out of there.").
[10] Trial Tr. at pp. 399–400.
[11] *See*, People's Appellate Br. at p. 6, SR 102 ("[D]efendant did not put forward a justification defense; instead defense counsel's trial strategy was that defendant did not intend to injure (and attempt to

Prior to sending the jury to deliberate, the court, prosecutor and defense counsel agreed, in Petitioner's presence, that if the jury requested exhibits, the Court could give the exhibits to the jury without the need for everyone to reconvene in the courtroom.[12] Subsequently, the first note from the jury requested certain exhibits, including certain medical records of the victim, which were given to the jury without reconvening in open court.

The jury acquitted Petitioner of Attempted Murder but convicted him of Assault in the First Degree.

On direct appeal, Petitioner argued that there was insufficient evidence of serious physical injury, and that the trial court had erred in denying the motions for a trial order of dismissal on that point.   However, the state court rejected that contention, stating in pertinent part:

> We reject that contention. Serious physical injury, as defined in the Penal Law, "means physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (§ 10.00[10] ). Here, the stab wound inflicted by defendant to the victim's left arm and elbow *resulted in protracted impairment* inasmuch as it caused the victim to be unable to extend the arm for several months after the attack, and extensive surgery was required to repair the injury (*see People v. Joyce*, 150 A.D.3d 1632, 1633, 54 N.Y.S.3d 472 [4th Dept. 2017]; *People v. Heyliger*, 126 A.D.3d 1117, 1119, 5 N.Y.S.3d 566 [3d Dept. 2015], *lv denied* 25 N.Y.3d 1165, 15 N.Y.S.3d 297, 36 N.E.3d 100 [2015]; *People v. Rice*, 90 A.D.3d 1237, 1238, 935 N.Y.S.2d 169 [3d Dept. 2011], *lv denied* 18 N.Y.3d 961, 944 N.Y.S.2d 490, 967 N.E.2d 715 [2012], reconsideration denied 19 N.Y.3d 966, 950 N.Y.S.2d 118, 973 N.E.2d 216 [2012] ). Moreover, the stab wound inflicted by defendant to the webbing of the victim's hand resulted in nerve damage to her thumb, causing permanent

---

murder) victim.  Indeed, defense counsel did not request a justification instruction to the jury, but did consent to an expanded instruction on intent.").

[12] Trial Tr. at p. 449 ("THE COURT:  Counsel, would it be okay to given them the exhibits without gathering together?  MR. STUBBE: Yes.  MR. GALLAGHER:  Yes.").

> numbness (*see People v. Willock*, 298 A.D.2d 161, 162, 748 N.Y.S.2d 17
> [1st Dept. 2002], *lv denied* 99 N.Y.2d 566, 754 N.Y.S.2d 219, 784 N.E.2d
> 92 [2002] ).

*People v. Baker*, 156 A.D.3d 1485, 1485, 67 N.Y.S.3d 369, 370 (2017).  Petitioner further argued that defense counsel was ineffective, in violation of both the federal and state constitutions, for conceding, during his closing argument, that the victim had sustained a serious injury.  The state court again disagreed, stating:

> We reject that contention inasmuch as defendant failed to demonstrate the
> "'absence of strategic or other legitimate explanations'" for making that
> concession (*People v. Benevento*, 91 N.Y.2d 708, 712, 674 N.Y.S.2d 629,
> 697 N.E.2d 584 [1998]). Indeed, by acknowledging that the victim suffered
> serious physical injury in light of compelling evidence of the same, defense
> counsel directed the jury's attention elsewhere, *i.e.*, to whether the People
> established the element of intent.

*People v. Baker*, 156 A.D.3d 1485, 1485, 67 N.Y.S.3d 369, 370 (2017).  Finally, Petitioner argued in a *pro se* supplemental brief that the trial court had abused its discretion by precluding testimony from the victim's landlord, but the state court again disagreed, stating:

> We reject defendant's further contention in his *pro se* supplemental brief
> that Supreme Court abused its discretion in refusing to allow the testimony
> of a witness concerning circumstantial evidence that the victim may have
> sexually abused her son on prior occasions. Such testimony was irrelevant
> and unnecessary inasmuch as it would not have established the defense of
> justification, *i.e.*, that, at the time of the stabbing, defendant reasonably
> believed that it was necessary to use physical force to defend the child from
> the use or imminent use of unlawful physical force (*see generally People v.
> Goetz*, 68 N.Y.2d 96, 105–106, 506 N.Y.S.2d 18, 497 N.E.2d 41 [1986] ).

*People v. Baker*, 156 A.D.3d 1485, 1486, 67 N.Y.S.3d 369, 370–71 (2017).  Petitioner thereafter requested leave to appeal, but the New York Court of Appeals denied the application, as well as Petitioner's request for reconsideration.

Subsequently, Petitioner filed a state-court collateral attack pursuant to New York Criminal Procedure Law § 440.10, alleging that he was "denied his Sixth and Fourteenth Amendment rights to have received the effective assistance of trial counsel, due process of law and the attendant right to a fundamentally fair trial with a reliable result."[13]  In that regard, Petitioner argued that his defense attorney was ineffective in the following ways: He told the jury during his opening that he would present evidence of a self-defense justification defense, but then failed to do so;[14] he failed to request a jury instruction concerning the justification defense; he failed to object to statements by the prosecutor during summation that the victim was "stabbed," as opposed to "sliced";  he failed to object to the trial court allowing exhibits to be sent to the jury without reconvening in open court;[15] and he had a conflict of interest with a prosecution witness of which he did not inform the court.

The trial court denied the application, finding that the majority of Petitioner's claims were matters of record that could have been raised on direct appeal, and that his claims also lacked merit.  Petitioner thereafter requested leave to appeal, but the New York State Supreme Court, Appellate Division Fourth Department, denied the request.

In the instant action, Petitioner alleges that his conviction was unconstitutionally obtained for the following reasons: 1) the trial court denied him the right to present a defense by precluding the testimony of the victim's landlord concerning her belief that the

---

[13] State Court R. at pp. 129–130.

[14] Actually, the defense case, consisting of Petitioner's testimony, was consistent with defense counsel's opening statement, in which he said, in pertinent part: "We're not minimizing the fact that Sabrina got cut, and that she may have lost some use of her arm.  But, it's not my client's legal fault that that happened. Did he cut her?  Yeah.  Was he holding the weapon when he cut her?  Yes.  But, he will testify it was during a struggle, and that it was in direct response to her [sexually abusing her child.]." Trial Tr. at pp. 196–197.

[15] This argument had two aspects:  First, that the medical records should not have been given to the jury since they were unredacted, and, second, that Petitioner was denied the right to be present  when the jury's note, requesting exhibits, was addressed by the trial court.

victim had abused the victim's son; 2) trial counsel provided ineffective assistance when he conceded to the jury that the victim sustained serious injury, without Petitioner's consent; 3) trial counsel provided ineffective assistance when he told the jury in his opening statement that Petitioner's actions were justified and done in self-defense; and 4) the trial court and counsel improperly agreed to send the jury the victim's unredacted medical records, which were in evidence, "without reconvening the court and out of the presence of Petitioner."   (Petitioner indicated in the Petition that his third and fourth grounds were unexhausted at that time).

Respondent opposes the petition, maintaining that Petitioner's first two arguments are "meritless," that his third argument is unexhausted but also "plainly meritless," and that his fourth argument is "unexhausted, procedurally defaulted, and plainly meritless."[16]

Petitioner subsequently filed a Reply essentially reiterating the claims in the Petition.[17]

The Court has considered the arguments of the parties and the entire record.

## DISCUSSION

Petitioner's *Pro Se* Status

Since Petitioner is proceeding *pro se*, the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

---

[16] Answer at ¶ 6.

[17] As mentioned earlier, the Petitioner clearly sets forth four claims. Pet. at pp. 7–8.  To the extent the Reply addresses claims that were not raised in the Petition, such as a claim that defense counsel acted under a conflict of interest (which was part of his state court collateral attack but not his federal court habeas petition), the Court declines to address such claims.

<u>Evidentiary Hearing Not Required</u>

Pursuant to Rule 8 of Rules Governing Habeas Corpus cases under Section 2254 in the United States District Courts and upon review of the answer, transcript and record, the Court determines that an evidentiary hearing is not required.

<u>Section 2254 Principles</u>

Petitioner brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, and the general legal principles applicable to such a claim are well settled.

> As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and interpreted by the Supreme Court, 28 U.S.C. § 2254—the statutory provision authorizing federal courts to provide habeas corpus relief to prisoners in state custody—is "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011). A number of requirements and doctrines . . . ensure the centrality of the state courts in this arena. First, the exhaustion requirement ensures that state prisoners present their constitutional claims to the state courts in the first instance. *See id*. (citing 28 U.S.C. § 2254(b)). Should the state court reject a federal claim on procedural grounds, the procedural default doctrine bars further federal review of the claim, subject to certain well-established exceptions. *See generally Wainwright v. Sykes*, 433 U.S. 72, 82–84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). If the state court denies a federal claim on the merits, then the provisions of § 2254(d) come into play and prohibit federal habeas relief unless the state court's decision was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1)-(2). Finally, when conducting its review under § 2254(d), the federal court is generally confined to the record before the state court that adjudicated the claim. *See Cullen v. Pinholster*, —— U.S. ——, 131 S.Ct. 1388, 1398–99, 179 L.Ed.2d 557 (2011).

*Jackson v. Conway*, 763 F.3d 115, 132 (2d Cir. 2014).  As just mentioned, regarding claims that were decided on the merits by state courts,

a federal court may grant habeas corpus relief to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

A state court decision is contrary to clearly established Federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's result.

A state court decision involves an unreasonable application of clearly established Federal law when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case.  To meet that standard, the state court's decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.  It is well established in this circuit that the objectively unreasonable standard of § 2254(d)(1) means that a petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief.

*Santana v. Capra*, No. 15-CV-1818 (JGK), 2018 WL 369773, at *7–8 (S.D.N.Y. Jan. 11, 2018) (Koeltl, J.) (citations and internal quotation marks omitted).

When applying these standards,

[t]he state court's findings of fact are presumed to be correct unless the petitioner can rebut this presumption by clear and convincing evidence[,] [28 U.S.C.] § 2254(e)(1)[, and] [t]he petitioner bears the ultimate burden of proving by a preponderance of the evidence that his [federal] constitutional rights have been violated. *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir.1997).

*Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012), as amended (Aug. 9, 2012).

Conversely, "[a] claim that a state conviction was obtained in violation of state law is not cognizable in the federal court." *Howard v. Walker*, 406 F.3d 114, 121 (2d Cir. 2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) and *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.1998)); *see also, Guerrero v. LaManna*, 325 F. Supp. 3d 476, 483 (S.D.N.Y. 2018) ("The role of federal courts reviewing habeas petitions is not to re-examine the determinations of state courts on state law issues, but only to examine federal constitutional or statutory claims. 28 U.S.C. § 2254(a); *see Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).  Federal courts deciding habeas petitions do not serve as appellate courts to review state court decisions of state law claims. Their purpose instead is to review whether the circumstances surrounding the petitioner's detention 'violate fundamental liberties of the person, safeguarded against state action by the Federal Constitution.' *Townsend v. Sain*, 372 U.S. 293, 311–312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Habeas petitions may not simply repackage state law claims, which have previously been found to be meritless, in order to obtain review. *DiGuglielmo v. Smith*, 366 F.3d 130, 136 (2d Cir. 2004).").

<u>The State Court's Evidentiary Ruling/Denial of a Defense</u>

Petitioner first contends that the trial court violated his federal constitutional rights when it denied him a defense by precluding testimony from the victim's landlord. However, errors involving a state court's evidentiary rulings are generally not reviewable in a Section 2254 habeas proceeding, unless they affect the fundamental fairness of the state proceeding:

> Under Supreme Court jurisprudence, a state court's evidentiary rulings, even if erroneous under state law, do not present constitutional issues cognizable under federal habeas review. *See Hawkins v. Costello*, 460 F.3d 238, 244 (2d Cir. 2006) (citing *Crane v. Kentucky*, 476 U.S. 683, 689, 106

S.Ct. 2142, 90 L.Ed.2d 636 (1986) (noting the Court's "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts")). Therefore, unless the challenged evidentiary rulings in the state proceedings affect the fundamental fairness of those proceedings, the claims are not properly reviewable in this context. *See DiGuglielmo v. Smith*, 366 F.3d 130, 137 (2d Cir. 2004) (per curiam) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")); *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)) (holding that introduction of improper evidence does not amount to a violation of due process unless the evidence "is so extremely unfair that its admission violates fundamental conceptions of justice."). Such unfairness will only result where: ["][T]he erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short it must have been crucial, critical, [and] highly significant.["] *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir.1985) (internal quotation marks omitted).

*McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 72–73 (2d Cir. 2011) (footnote omitted).

In this case, to the extent the trial court erred at all under New York State law when it precluded the testimony, which Petitioner has not shown, the error did not affect the fundamental fairness of Petitioner's trial. That is, when viewed objectively in light of the entire record before the jury, the evidence was not sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. Consequently, Petitioner's evidentiary fair trial/due process claim lacks merit.

Similarly lacking in merit is Petitioner's contention that the trial court "denied him a defense" by excluding the subject testimony. In that regard, the legal principle upon which Petitioner relies to bring this claim is clear:

> A criminal defendant has "a fundamental due process right to present a defense." *United States v. Mi Sun Cho*, 713 F.3d 716, 721 (2d Cir. 2013). However, this right "is not absolute, for a defendant must comply with established rules of procedure and evidence designed to assure both fairness and reliability," *id*. (internal quotation marks omitted), "and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Williams v. Lord*, 996 F.2d 1481, 1483 (2d Cir.1993) (internal quotation marks omitted). The erroneous exclusion of evidence violates a defendant's federal constitutional right to present a defense only if "the omitted evidence evaluated in the context of the entire record creates a reasonable doubt that did not otherwise exist." *Jones v. Stinson*, 229 F.3d 112, 120 (2d Cir. 2000) (brackets and internal quotation marks omitted).

*United States v. Platt*, 608 F. App'x 22, 28–29 (2d Cir. 2015).

Here, as already indicated, Petitioner has not shown that the precluded testimony would have created a reasonable doubt as to whether he committed Assault in the First Degree.  In that regard, Petitioner maintains that the precluded testimony would have established a justification defense.  However, that is incorrect, since, as Respondent indicated in its responsive brief, the landlord's testimony

> would not have established that Petitioner stabbed [the victim] reasonably believing that he needed to use force to protect [the child] from a sexual assault.  . . .  [I]n this case, Petitioner never alleged – and certainly did not testify – that he stabbed [the victim] to stop her from assaulting her son.  By Petitioner's own account, the alleged sexual assault on [the child] was over before Petitioner stabbed [the victim].  Thus, stopping the alleged sexual assault could not have provided a justification for the stabbing.  [The landlord's] testimony about prior incidents that may have provided circumstantial evidence of prior sexual abuse thus was not probative of whether the stabbing was justified by Petitioner's defense of [the child].  . . .  In addition, Petitioner's belief that [the victim] was sexually abusing her son when he entered the room was based on what he claims to have seen with his own eyes, not on what he claims [the landlord] had told him.  Whether or not [the landlord] had told him of her suspicions, Petitioner claims to have acted as he did based on his own observations.  [The landlord's] testimony would not have materially added to the state of mind evidence.

Resp't Mem. of Law at pp. 11–12.

Petitioner has not shown that the state courts' rulings concerning the landlord's testimony were contrary to, or an unreasonable application of, clearly established Supreme Court law, and his arguments relating to the exclusion of the landlord's testimony are therefore denied.[18]

### Denial of Due Process/Denial of Fair Trial

Petitioner next alleges that the trial court denied him due process and a fair trial by sending exhibits to the jury, in response to the jury's request for such, without first reconvening the parties in court to discuss the jury note.  However, as noted earlier, prior to jury deliberation the prosecution and defense counsel had, in Petitioner's presence, expressly agreed that the trial court could send the exhibits to the jury in the manner to which Petitioner now objects.  Moreover, Petitioner has not shown that he suffered any prejudice from the trial court's action.

Under similar circumstances, another court in this Circuit denied a habeas petitioner's claim, stating:

> Feliciano has likewise failed to show that he is entitled to habeas relief based on the trial court's failure to reconvene the parties in response to Jury Note #12.

---

[18] Petitioner also contends that the trial court erred by allowing the jury to view the victim's unredacted medical records, which had been admitted into evidence without objection.  However, Petitioner has not shown that any particular aspect of the records should have been redacted, nor has he argued or shown that such redaction would have created a reasonable doubt as to his guilt, or that the state court's failure to redact the records was contrary to, or an unreasonable application of, clearly established Supreme Court law.  Accordingly, this aspect of his petition also lacks merit. *See, Diggs v. Conway*, No. 09 CIV. 08219 NRB, 2010 WL 3069641, at *5 (S.D.N.Y. July 30, 2010) ("[P]etitioner cannot successfully claim that the trial court's decision not to redact this statement from the victim's medical records deprived him of a fundamentally fair trial.' Given the victim's testimony as well as that of the eyewitness, the statement in the hospital record was simply cumulative. Moreover, the record contains overwhelming proof of petitioner's guilt and there can be no serious suggestion that, had this statement been redacted, it would have allowed for a reasonable doubt that did not otherwise exist.").

***

[T]he trial court's behavior as to Jury Note #12 [was not] "contrary to, or ... an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). "The Sixth Amendment and Rule 43 of the Federal Rules of Criminal Procedure require that ordinarily a message from the jury be answered in open court and that counsel be given the opportunity to be heard before the trial judge responds to the jury's questions." *United States v. Henry*, 325 F.3d 93, 105 (2d Cir. 2003) (quoting *United States v. Robinson*, 560 F.2d 507, 516 (2d Cir. 1977) (*en banc*)). The Second Circuit's decision in *Robinson* rested on the Supreme Court's decision in *Rogers v. United States*, 422 U.S. 35 (1975). In *Rogers*, the jury sent a note "inquiring whether the court would 'accept the Verdict—Guilty as charged with extreme mercy of the Court.'" *Id*. at 36 (some quotation marks omitted). The Supreme Court held that "the jury's message should have been answered in open court and that petitioner's counsel should have been given an opportunity to be heard before the trial judge responded." *Id*. at 39. *Rogers* cited the Supreme Court's prior decision in *Shields v. United States*, 273 U.S. 583 (1927). In *Shields*, "[t]he trial judge had replied to a written communication from the jury, indicating its inability to agree as to the guilt or innocence of the defendant, by sending a written direction that it must find the defendant 'guilty or not guilty.'" *Rogers*, 422 U.S. at 39.

The state court's actions here were not "contrary to, or ... an unreasonable application of" any "clear[ ]" holding of *Rogers* or *Shields*. 28 U.S.C. § 2254(d)(1). Even assuming that Feliciano had a constitutional right to have the jury note read aloud in open court, there is no Supreme Court case establishing Feliciano's right to respond to a jury note in circumstances like those presented here. As noted above, the New York court reasoned that the jury note required only the ministerial action of sending an exhibit back to the jury room. That decision did not clearly contravene the Supreme Court's holdings in *Rogers* or *Shields*.

Feliciano has also failed to show that he was prejudiced by the trial court's failure to reconvene the parties in response to Jury Note #12. "[A]ny violation of" a defendant's "Sixth Amendment right to have counsel apprised of and given an opportunity to respond to every jury note"—assuming a defendant has such a right—"is subject to harmless error review." *Silva*, 2016 WL 5793977, at *9 (citing *United States v. Adeniji*, 31 F.3d 58, 65 (2d Cir. 1994); *United States v. Schor*, 418 F.2d 26, 30 (2d Cir. 1969)). Even if

the trial court erred by not reconvening the parties and permitting Feliciano's counsel to respond to the jury's request for an exhibit, any such error was harmless. *See United States v. Ballistrea*, 101 F.3d 827, 837 (2d Cir. 1996) (holding that an error in failing to follow the correct procedures for a jury note "largely concerned administrative matters" and was therefore harmless). Thus, Feliciano is not entitled to habeas relief on this ground.

*Feliciano v. Lee*, No. 1:18-CV-9591-GHW, 2020 WL 5076865, at *9–11 (S.D.N.Y. Aug. 26, 2020) (footnote omitted).

Applying that same reasoning here, this Court similarly finds that Petitioner's jury-note claim lacks merit.

<u>Ineffective Assistance of Counsel</u>

Petitioner next contends that his trial counsel provided constitutionally-deficient representation, both in conceding that the victim sustained "serious injury" without first consulting him, and in failing to pursue a justification defense.

To succeed on a claim of ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984), the petitioner must establish that counsel's performance "fell below an objective standard of reasonableness[,]" *id*. at 688, and that the petitioner suffered prejudice as a result, *see id*. at 694. Prejudice, for *Strickland* purposes, is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "The habeas petitioner bears the burden of establishing both deficient performance and prejudice." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (citation omitted).

With regard to defense counsel's concession that the victim sustained a "serious injury," Petitioner contends that such statement was an "improper concession of his client's guilt to [the] crime."[19]  However, that assertion is of course incorrect, since counsel conceded only one element of the crime, while challenging another major element of the crime, namely, intent.  Accordingly, counsel did not concede Petitioner's guilt of the crime for which he was convicted.

Nor did counsel's concession constitute ineffective assistance of counsel.  As a preliminary matter, the fact that counsel may have pursued a particular trial strategy without first obtaining Petitioner's consent does not necessarily establish ineffective assistance. *See, e.g., Gilliam v. Artus*, 653 F. Supp. 2d 315, 332–33 (W.D.N.Y. 2009) ("Although trial counsel has a duty to consult with a client regarding 'important decisions,' including questions of trial strategy, *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052, that obligation does not require counsel to obtain the defendant's consent to 'every tactical decision.' *Taylor v. Illinois*, 484 U.S. 400, 417–18, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (attorney has authority to manage most aspect of the defense without obtaining his client's approval).").  Although, a Sixth Amendment ineffective-assistance claim may arise where counsel's waiver or concession was unreasonable and prejudicial:

> To be sure, personal waiver is required for certain rights; a defendant "has the ultimate authority to determine whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Florida v. Nixon*, 543 U.S. 175, 187, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004) (internal quotation marks omitted). But while "there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has—and must have—full authority to manage the conduct of the trial. The adversary process could not function effectively if every tactical decision required client approval." *Taylor v. Illinois*, 484 U.S. 400, 417–18, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (footnote omitted).

---

[19] Pet. at p. 8.

> Spruill has nowhere argued that his consent to the removal of a deliberating juror had to be personal rather than through counsel to foreclose a challenge on appeal. Nor has the dissent cited any authority supporting that conclusion. As the cited cases show, most waivers are effected through counsel. And as we observe [elsewhere in this decision], a defendant who thinks his attorney's waiver of a point was unreasonable and prejudicial may have a Sixth Amendment claim for ineffective representation.

*United States v. Spruill*, 808 F.3d 585, 597 n. 8 (2d Cir. 2015).

However, a defense counsel's concession of an element of the crime is not necessarily unreasonable or prejudicial.   Rather,

> [d]ecisions that are based on reasonable strategy and judgment do not constitute deficient performance. Defense counsel is faced with "any number of choices about how best to make a client's case." *Buck v. Davis*, 137 S. Ct. 759, 775 (2017). "The lawyer has discharged his constitutional responsibility so long as his decisions fall within the "wide range of professionally competent assistance." *Id*. "If the attorney made a strategic choice after thoughtful consideration, that decision will be 'virtually unchallengeable.'" *Rosemond*, 958 F.3d at 121. In some circumstances, defense counsel's decision not to challenge or to concede an element of the charged crime can be reasonable, particularly when there is overwhelming evidence establishing the existence of such element. *See id*.

*Nicolescu v. United States*, No. 3:15-CV-756-VLB, 2021 WL 917157, at *9 (D. Conn. Mar. 10, 2021), *appeal dismissed*, No. 21-1060, 2022 WL 15292744 (2d Cir. June 9, 2022).

Here, it is undisputed that the victim sustained her injuries during an altercation with Petitioner, and Petitioner does not dispute the state appellate court's determination that those injuries  resulted in protracted loss or impairment of the victim's ability to feel her thumb or to bend her elbow, and therefore qualified as "serious physical injury" under Penal Law § § 10.00[10].  The state court found that under those circumstances it did not amount to ineffective assistance of counsel, in violation of Petitioner's Sixth Amendment rights, for defense counsel to concede the element of serious physical injury and focus

his argument on the element of intent.  Petitioner here has not shown that such state-court ruling was contrary to, or an unreasonable application of, clearly established Supreme Court law.  Consequently, Petitioner's ineffective-assistance claim on that ground is denied.

Lastly, Petitioner argues that his trial counsel was ineffective for failing to argue justification to the jury in his closing, and for failing to request a jury instruction on justification, after suggesting to the jury in his opening that the defense would show Petitioner's actions had been justified in order to stop a forcible sexual assault on the victim's child.

Respondent, though, as noted earlier, maintains that the evidence at trial did not support a justification defense, stating:

> [I]n this case, petitioner never alleged –and certainly did not testify—that he stabbed [the victim] to stop her from assaulting her son.  By petitioner's own account, the alleged sexual assault on [the victim's son] was over before petitioner stabbed [the victim].  Thus, stopping the alleged sexual assault could not have provided a justification for the stabbing.

Resp't Mem. of Law, ECF No. 13, at p. 11.

It is evident from the record that at the start of the trial, defense counsel intended to pursue a justification defense based on Petitioner's expected testimony, as he indicated in his opening statement.[20]   That is, defense counsel expected Petitioner to testify that he used force to stop the victim from performing a forcible sexual assault on

---

[20] *See*, Trial Tr. at pp. 195–197 ("[H]e first yelled something, what are you doing, and then he took the steps necessary to stop this from happening.  . . .  Willie took the steps that are necessary, and the judge, I believe, will tell you that deadly physical force, deadly physical force, is allowable to stop this from happening.  . . .  [H]e will tesify that [the victim was injured] during a struggle, and that it was in direct response to her having her mouth on her son's penis.  And that, I believe, going to be the facts that are going to come in.").

her child.[21]   However, it is also evident that Petitioner's actual testimony did not support a justification defense.  In that regard, there was discussion between counsel and the trial court, in connection with the prosecutor's application to preclude testimony from the victim's landlord, in which the trial court observed, regarding the showing that would be required to support defense's proposed justification defense:

> It's a reasonable belief that at the moment he observed what was going on, that there was a forcible sex act going on.  . . .  [I]t has to be the forced sexual act.  If there's a forced sexual act, he's got a justification defense.  . . . *I think it comes down to whether or not there was a forcible sexual act that was taking place, and whether he reasonably perceived it as that.* Reasonableness will go to the jury.  I don't know what he's going to testify to, by the way.  I don't even know if I'm going to give that defense until I have heard it.

Trial Tr. at pp. 301–302, 305 (emphasis added).  Subsequently, Petitioner testified, and, on cross-examination, admitted that the alleged sexual assault by the victim on her son had ceased prior to the infliction of any injuries on the victim:

> Q. And bottom line is when you walked in the bedroom did she stop doing what she was doing to the baby?
>
> A. After I called her name.
>
> Q. So after that, she never touched the baby again in your presence?
>
> A. Not in my presence.

Trial Tr. at p. 346.  Additionally, Petitioner testified that even though the victim stopped her alleged sexual assault on the child immediately after Petitioner spoke to her, he nevertheless attacked her, by punching her, after which she allegedly grabbed a knife. Trial Tr. at p. 347. ("I pulls her off and everything because when I looked down and

---

[21] Trial Tr. at pp. 195–196.

everything and I called her name and she looks up and everything, and I asked her what she doing, understand me, and the baby was crying and everything and I hit her."); *id.* ("Q. Was she still trying to give oral sex to the baby at that point? A. No.  When I called her name she looked up.  Q. And then you pulled her [away from the baby] and you said you punched her?  A. Yes, I pushed her.  Q. You pushed her or you punched her?  A. I punched her.").

Consequently, Petitioner's testimony was inconsistent with a justification defense based on a reasonable belief that it was necessary to use force to stop an ongoing or imminent forcible criminal sexual act.[22] *See*, New York Penal Law § 35.15 ("1. A person may, subject to the provisions of subdivision two, use physical force upon another person when and to the extent he or she reasonably believes such to be necessary to defend himself, herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful physical force by such other person[.]  . . .  2. A person may not use deadly physical force upon another person under circumstances specified in subdivision one unless:  . . .  (b) He or she reasonably believes that such other person is committing or attempting to commit a kidnapping, forcible rape, forcible criminal sexual act or robbery[.]") (McKinney); *see also, People v. Jones*, 142 A.D.3d 1383, 1384, 38 N.Y.S.3d 357, 359 (4th Dept. 2016) ("[A] defendant is justified in 'us[ing] physical force upon another person when and to the extent he or she reasonably believes such to be necessary to defend himself, herself, or a third person from what he or she reasonably believes to be the use or imminent use of unlawful physical force by such other person"

---

[22] To the extent Petitioner is now contending, contrary to the strategy pursued at trial, that defense counsel should have argued that Petitioner acted in self-defense, after the victim allegedly grabbed a knife, the Court agrees with Respondent's analysis for why such a justification instruction would not have been warranted based on Petitioner's trial testimony, and why, alternatively, the failure to request such an instruction was not prejudicial. *See*, Resp't Mem. of Law, ECF No. 13, at pp. 19–21.

(Penal Law § 35.15[1]; *see People v. Goetz*, 68 N.Y.2d 96, 105–106, 506 N.Y.S.2d 18, 497 N.E.2d 41). Here, there was no reasonable view of the evidence supporting a justification charge because '[t]he threatened harm must be imminent' (*People v. Victor*, 176 A.D.2d 769, 769, 574 N.Y.S.2d 826, *lv. denied* 79 N.Y.2d 833, 580 N.Y.S.2d 214, 588 N.E.2d 112), and here it was not.").[23] Evidently, that is why a justification instruction was neither requested nor given in this action.[24]

In sum, the state court found, in denying Petitioner's collateral attack, that he had not shown that his trial counsel was ineffective with regard to his handling of the proposed justification defense, and Petitioner has not shown that, on the facts set forth above concerning petitioner's trial testimony, such determination was contrary to, or an unreasonable application of, clearly established Supreme Court law.  The Court finds that Petitioner has not shown either deficient performance or prejudice,[25] and this claim is therefore denied.

---

[23] *Also, cf., People v. Patterson*, 176 A.D.3d 1637, 1639, 110 N.Y.S.3d 190, 192–93 (2019) ("[R]egardless of whether defendant's belief would have been reasonable at an earlier point in time, and even if defendant's trial testimony establishes that he actually believed that the victim was preparing to rob him with a weapon, there is no reasonable view of the evidence that a reasonable person in defendant's circumstances would have believed the victim to be committing or attempting to commit a robbery at the time of the shooting. Put simply, the surveillance footage reflects that defendant's shooting of the victim with the handgun cannot be considered to have been to prevent a robbery.  Thus, we conclude that the court properly refused to include in its justification charge an instruction on the use of deadly physical force to prevent the commission of a robbery. There was no reasonable view of the evidence, viewed in the light most favorable to defendant, that at the time of the assault the victim was using or threatening the immediate use of force to obtain property.") (citations and internal quotation marks omitted).
[24] The charge conference was held off the record in the trial judge's chambers, though the judge placed a summary of the conference on the record the following day. Trial Tr. at pp. 379–381.  Defense counsel did not indicate that he had any objection to the proposed charge.
[25] Particularly with regard to Petitioner's contention that defense counsel's reference to a justification defense during his opening statement was prejudicial, the Court disagrees and notes that the trial court gave a curative instruction during the Prosecution's summation, advising the jury that defense counsel's statement on that point was not evidence. Trial Tr. at pp. 409.  Additionally, during his jury instruction, the trial judge indicated that "[t]he evidence is the testimony of witnesses and the exhibits that were actually marked and received into evidence." *Id.* at p. 423.  Moreover, defense counsel made a similar justification-type argument during his closing statement, when arguing lack of intent, and the Court doubts that the jury would have felt that defense counsel had failed to carry through on what he indicated during his opening simply because the trial court did not give a specific justification instruction.  Rather, it appears the jury simply did not buy the argument that Petitioner had not intended to harm the victim.

CONCLUSION

The application under 28 U.S.C. § 2254 is denied.  Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Petitioner has not made a substantial showing of the denial of a constitutional right.  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.  The Clerk of the Court is directed to amend the caption as noted above (*See*, footnote 1) and to close this action.

So Ordered.

Dated:Rochester, New York
      January 17, 2023

ENTER:

CHARLES J. SIRAGUSA
United States District Judge